UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MACKING NETTLES, JR. #271812,

    Plaintiff,                                           Hon. Robert J. Jonker

v.                                                     Case No. 1:22-cv-119

ANDREA EDGAR, NP, et al.,

    Defendants.
_____/

**REPORT AND RECOMMENDATION**

This matter is before me on Defendant Rueben Babbitt's Motion for Summary Judgment on the Basis of Exhaustion (ECF No. 24), and Defendant Andrea Edgar, N.P's Motion for Summary Judgment Based Solely on the Failure to Exhaust Administrative Remedies. (ECF No. 27.) The motions are fully briefed and ready for decision. Pursuant to 28 U.S.C. § 636(b)(1)(B), I recommend that Defendant Babbitt's motion be **DENIED,** and that Defendant Edgar's motion be **GRANTED**.

**I.  Background**

Plaintiff, a prisoner currently incarcerated with the Michigan Department of Corrections (MDOC) at Central Michigan Correctional Facility, has sued Andrea Edgar, N.P., Rueben Babbitt, R.N., and Unknown Parties Nos. 1 and 2 pursuant to 42 U.S.C. § 1983 based on events that occurred at Carson City Correctional Facility (DRF) while Plaintiff was housed at that facility. Edgar and Babbitt both work in healthcare at DRF. Plaintiff alleges that they were deliberately indifferent to his serious medical need in violation of the Eighth Amendment by ignoring his requests to refill his albuterol inhaler for his asthma, eventually leading to an asthma attack.

1

Plaintiff alleges in his verified amended complaint that approximately 20 years ago, an MDOC physician diagnosed him with asthma and prescribed a Keep-On-Person (KOP) albuterol inhaler. His inhaler is refilled every three months. Over the years, to obtain the refill, Plaintiff simply kited healthcare with his refill request and usually received a medical callout the next day to pick up his new inhaler, without being required to see a medical provider for an examination. (ECF No. 14 at PageID.113.)

Plaintiff apparently transferred to DRF during the summer of 2021. Plaintiff alleges that he made several requests to refill his KOP inhaler, but his requests were ignored for twelve days, from August 11, 2021, to August 23, 2021. (*Id.*) Plaintiff alleges that Defendant Edgar reviewed his chart on August 14, 2021, but failed to do anything to ensure that his inhaler was refilled. Plaintiff alleges that Defendant Edgar simply noted that she would see him in six weeks for his annual checkup. (*Id.* at PageID.117, 119.) Plaintiff alleges that on August 22, 2021, Defendant Babbitt sent him a kite restating Plaintiff's request and indicating that the order for Plaintiff's inhaler had expired and that he should have his unit officer contact healthcare if he was having trouble breathing so that healthcare could schedule an evaluation. (*Id.* at PageID.122–24.) Plaintiff contends that Babbitt failed to act in spite of his knowledge that Plaintiff was having difficulty breathing and needed his inhaler refilled. (*Id.* at PageID.124.)

Defendants move for summary judgment on the basis that Plaintiff failed properly to exhaust his claims against them before filing this action.

## II. Summary Judgment Standard

Summary judgment is appropriate if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Material facts are facts that are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.*

The court must draw all inferences in a light most favorable to the non-moving party but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002). Where the moving party has the burden, "his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has emphasized that the party with the burden of proof "must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001)). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

### III.  Discussion

Pursuant to 42 U.S.C. § 1997e(a), a prisoner must exhaust all available administrative remedies before filing a lawsuit with respect to prison conditions under 42 U.S.C. § 1983. *See Porter v. Nussle*, 534 U.S. 516, 524 (2002). Prisoners are no longer required to demonstrate

exhaustion in their complaints. *See Jones v. Bock*, 549 U.S. 199, 216 (2007). Instead, failure to exhaust administrative remedies is "an affirmative defense under the PLRA," which the defendant bears the burden of establishing. *Id*. With respect to what constitutes proper exhaustion, the Supreme Court has stated that "the PLRA exhaustion requirement requires proper exhaustion," defined as "compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90-93 (2006). In *Bock*, the Court reiterated:

> Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to "properly exhaust." The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.

*Bock*, 549 U.S. at 218.

MDOC Policy Directive 03.02.130 sets forth the applicable grievance procedure for prisoners in MDOC custody. Prior to submitting a grievance, a prisoner is required to "attempt to resolve the issue with the staff member involved within two business days after becoming aware of a grievable issue, unless prevented by circumstances beyond his/her control or if the issue falls within the jurisdiction of the Internal Affairs Division in Operations Support Administration." Mich. Dep't of Corr. Policy Directive 03.02.130 ¶ Q (effective 03/18/2019). If this attempt is unsuccessful (or is inapplicable), the prisoner may submit a Step I grievance. *Id.* The Step I grievance must be submitted within five business days after attempting to resolve the matter with staff. *Id.* The issues asserted in a grievance "should be stated briefly but concisely," and the "[d]ates, times, places, and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ S.

If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II within ten business days of the response, or if no response was received, within ten business days after the response was due. *Id.* at ¶ DD. If the prisoner is dissatisfied with

the Step II response, or does not receive a timely Step II response, he may appeal the matter to Step III. *Id.* at ¶ HH. The Step III grievance must be submitted within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.*

### A. Defendant Babbitt

In support of his motion, Defendant Babbitt attaches a Step III Grievance Report showing grievances that Plaintiff exhausted through Step III during the relevant time period. (ECF No. 25-3.) The Step III Report shows that Plaintiff pursued only one grievance through Step III pertaining to the matter at issue. On August 24, 2021, Plaintiff filed a Step I grievance naming Defendant Babbitt, Courtney Miller, PhA, Elizabeth Miller, LPN, and Wease, RN, all of whom denied his request for his inhaler. (ECF No. 25-3 at PageID.232–33.) The grievance was assigned identifier DRF-21-08-2251-28i (2251 Grievance). On August 31, 2021, Grievance Coordinator L. Becher issued Plaintiff a receipt indicating that his grievance had been received and that it had a response due date of September 21, 2021. (ECF No. 31-2.) On September 16, 2021, L. Becher rejected the grievance for "multiple issues." (ECF No. 25-3 at PageID.232.) Plaintiff appealed the issue to Step II, stating that his issue was "clearly stated at the top of [his] grievance," and that "the facts relevant to understand the situation does not create 'multiple issues.'" (*Id.* at PageID.230.) The rejection was upheld at Step II. (*Id.* at PageID.231.) Plaintiff then filed a Step III appeal, but the rejection was upheld. (*Id.* at PageID.229–30.)

Babbitt contends that Plaintiff failed properly to exhaust his claim because his grievance was rejected at Step I and the rejection was upheld at Steps II and III. To exhaust his claims, a prisoner confined with the MDOC must comply with the MDOC's grievance policy, including its procedural requirements. Where a grievance has been properly rejected by the prison for

5

noncompliance, a court may conclude that the plaintiff failed to exhaust his administrative remedies. *See Vandiver v. Correctional Med. Servs., Inc.*, 326 F. App'x 885, 891 n.3 (6th Cir. 2009) (holding that a grievance rejected as vague did not satisfy the exhaustion requirement); *Martin v. Bergh*, No. 2:06-cv-119, 2008 WL 4283517, at *1 (W.D. Mich. Sept. 12, 2008) (citing *Woodford*, 548 U.S. at 90–91) (grievance rejected as untimely not properly exhausted).

Plaintiff contends that the rejection was improper because the grievance coordinator had already accepted his grievance for filing without rejecting it, and once it had been accepted, nothing in the grievance policy allows a grievance coordinator to reverse course and reject the grievance. In support of his argument, Plaintiff cites the following language from the grievance policy:

> After receipt of the grievance, the Grievance Coordinator shall determine if the grievance should be rejected pursuant to this policy. If the grievance is rejected, the grievance response shall state the reason for the rejection without addressing the merits of the grievance. The Grievance Coordinator's supervisor shall review the reason for the rejection to ensure it is in accordance with policy; both the Grievance Coordinator and the supervisor shall sign the grievance before returning the grievance to the grievant. *If the grievance is accepted, the Grievance Coordinator shall assign an appropriate respondent and identify the date by which the response is due*. . . .

Mich. Dep't of Corr. Policy Directive 03.02.130 ¶ Y (italics added). Plaintiff cites three exhibits to demonstrate that his grievance was accepted and, therefore, should have been considered on the merits. First, Exhibit 1, a grievance rejection letter regarding another grievance that Plaintiff filed at a different facility, was issued the same day the grievance coordinator received the grievance. No due date was assigned to the grievance. (ECF No. 31-1 at PageID.287.) Exhibit 2 is the Step I grievance receipt issued to Plaintiff the same day the DRF grievance coordinator received the 2251 Grievance. The receipt states that the grievance had been received and had a response due date of September 21, 2021. (ECF No. 31-2.) Finally, Exhibit 3 is a Step I grievance receipt that Plaintiff received for another grievance that was addressed on the merits. (ECF No. 31-3.) Plaintiff contends

6

that, as was the case with Exhibit 3, the grievance coordinator should have addressed the 2251 Grievance on the merits.

Plaintiff's exhibits do indeed tend to show that the grievance coordinator initially accepted the 2251 Grievance as properly filed and assigned a due date, but subsequently rejected it. Nonetheless, Plaintiff cites no provision of the grievance policy or any pertinent legal authority holding that an accepted-but-not-yet-addressed grievance may not later be rejected if the respondent determines that a valid ground warrants rejection. This is not a situation where, having issued a decision on the merits, prison officials may be deemed to have waived enforcement of procedural irregularities. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010) ("When prison officials decline to enforce their own procedural requirements and opt to consider otherwise-defaulted claims on the merits, so as a general rule will we.").

Still, Plaintiff's assertion that the 2251 Grievance was improperly rejected for containing "multiple issues" has merit. As another magistrate judge in this district has observed, the MDOC's grievance policy does not authorize rejection of a grievance on the ground that it contains "multiple issues." *Boone v. Macauley*, No. 1:20-cv-10, 2021 WL 5910767, at *4 (W.D. Mich. Nov. 16, 2011), *report and recommendation adopted*, 2021 WL 5908217 (W.D. Mich. Dec. 14, 2021). Rather, the court noted, a grievance may be rejected because it contains "multiple unrelated issues." Thus, the court concluded, because the respondent applied a basis for rejection not authorized by the policy, "the MDOC did not follow its own rules in rejecting Boone's grievance." *Id.* Although the court in *Boone* was applying the July 9, 2007 version of Policy Directive 03.02.130, the version at issue in this case, effective March 18, 2019, retains the same language authorizing rejection if a grievance "is vague, illegible, or contains *multiple unrelated issues*." Mich. Dep't of Corr. Policy Directive 03.02.130 ¶ J(1) (italics added). Thus, as in *Boone*, the

7

MDOC failed to follow its own rules in rejecting Plaintiff's grievance for "multiple issues," thereby depriving Plaintiff of the ability to resolve his problem through the grievance process. *Id.* at *5.

Moreover, in my judgment, the rejection would have been invalid even if the respondent had applied the correct rule. This Court has previously given the phrase "multiple unrelated issues" in Policy Directive 03.02.130 its ordinary meaning: "multiple disputes, concerns, or problems that are 'not connected or associated.'" *McDuff v. Addis*, No. 1:17-CV-912, 2018 WL 3239491, at *3 (W.D. Mich. July 3, 2018). While the Step I response did not identify multiple unrelated issues, Defendant Babbitt states that the unrelated issues were: (1) the denial of Plaintiff's requests to refill his inhaler; and (2) the $5 copay Plaintiff was charged for having to go to healthcare. (ECF No. 25 at PageID.208.) If so, these issues are clearly related. Plaintiff complained that he had always obtained a refill of his inhaler simply by kiting healthcare without having to be examined. At DRF, however, he was required to go to healthcare to be evaluated for his refill, and in the process was charged a copay he claims he should not have had to pay because there was no need for an examination. The relatedness is patent.

Accordingly, I recommend that the Court deny Defendant Babbitt's motion because the improper rejection rendered the grievance process unavailable to Plaintiff.

### B.     **Defendant Edgar**

Like Defendant Babbitt, Defendant Edgar contends that Plaintiff failed to exhaust his claim in accordance with the MDOC's grievance policy because his grievance was rejected at all three levels. This argument fails for the reasons set forth above.

Unlike Defendant Babbitt, however, Defendant Edgar contends that Plaintiff failed to exhaust his claim against her for a second, independent reason: Plaintiff failed to name her in the

grievance. In order to properly exhaust under the MDOC's grievance procedure, a prisoner generally must specify in his grievance the names of the individuals involved in the matter. *Mattox v. Edelman*, 851 F.3d 583, 590–91 (6th Cir. 2017) (citing *Reed–Bey*, 603 F.3d at 324–25 ("Requiring inmates to exhaust prison remedies in the manner the State provides—by, say, identifying all relevant defendants—not only furthers [the PLRA's] objectives, but it also prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation in the process.")).

A failure to name the individual or all of the individuals involved in the incident is not necessarily fatal to a prisoner's suit, so long as the grievance provides prison officials adequate notice of the claim against the defendant to allow them to resolve the issue. *See Calhoun v. Hill*, No. 07-11613, 2008 WL 4277171, at *3 (E.D. Mich. Sept. 17, 2008) (stating that a "Court may excuse a prisoner's failure to identify by name a particular defendant in a grievance when it is obvious from the facts alleged in the grievance that the defendant was involved"). Similarly, "an inmate need not identify each officer by name when the identities of the particular officers are unknown." *Thomas v. Woolum*, 337 F.3d 720, (6th Cir. 2003), *abrogated on other grounds by Woodford v. Ngo*, 548 U.S. 81 (2006). A grievance serves to alert prison officials to a problem, not to provide notice to a particular prison official that he or she may be sued. *Johnson v. Johnson*, 385 F.3d 503, 522 (5th Cir. 2004).

> But, at the same time, the grievance must provide administrators with a fair opportunity under the circumstances to address the problem that will later form the basis of the suit, and for many types of problems this will often require, as a practical matter, that the prisoner's grievance identify individuals who are connected with the problem.

*Id.*

Plaintiff contends that his failure to name Defendant Edgar in his grievance should be excused because he did not know her identity at the time he filed his grievance. He also notes that

9

none of the healthcare employees identified in the grievance identified Edgar for Plaintiff. (ECF No. 32 at PageID.306.) Plaintiff asserts that he was only able to ascertain Defendant Edgar's identity when he purchased his own medical records. (*Id.* at PageID.307.) Plaintiff further contends that, even though Defendant Edgar was not named in the grievance, it was obvious that she was involved in the incident.

Whether Plaintiff properly exhausted his claim against Defendant Edgar turns on whether he provided enough information in his Step I grievance about her or her conduct to allow prison officials "a fair opportunity" to address the issue in his grievance on the merits and develop an administrative record for any dispute that might end up in court. *Reed-Bey*, 603 F.3d at 324. Where a prisoner fails to identify a prison official by name, his grievance can still fulfill the purposes of exhaustion by the inclusion of other information identifying the official, such as the official's title or position or even the facts set forth in the grievance. *Cary v. Washington*, No. 17-13217, 2018 WL 5117812, at *8 (E.D. Mich. July 31, 2018), *report and recommendation adopted*, No. 17-CV-13217, 2018 WL 4501480 (E.D. Mich. Sept. 20, 2018) (collecting cases); *see also Christian v. Michigan Dep't of Corrs.-Health Servs.*, No. 12-12936, 2013 WL 5348832, at *4–5 (E.D. Mich. Sept. 24, 2013) (concluding that the plaintiff's general reference to "health services" in combination with specific recitations of the dates and subjects of health care kites sent to providers sufficed to identify them as "the target of the grievance"); *Harrington v. Smolinski*, No. 1:05-CV-688, 2006 WL 549383, at *3 (W.D. Mich. Mar. 6, 2006) ("Although Plaintiff did not mention Defendant Smolinski by name, he sufficiently identified her by the title of 'Classification Director.'").

Here, even crediting Plaintiff's claim that he did not know Edgar's identity, nothing in his grievance suggests that an unnamed medical provider had anything to do with the alleged improper

denial of Plaintiff's request to refill his inhaler. The reader will search the grievance in vain for any clue that an unnamed medical provider also was involved in the matter. Moreover, Plaintiff cannot credibly assert that he was unaware of Defendant Edgar's conduct (review of his chart) at the time he filed his grievance, as the August 14, 2021 kite from Elizabeth Miller, LPN, states: "Chart review scheduled with MP for evaluation." (ECF No. 10-8.) Thus, while Plaintiff did not know Edgar's identity, he clearly knew that a medical provider had reviewed his chart but had failed to authorize the inhaler refill.

Plaintiff failed to provide sufficient information to allow the respondent to address Plaintiff's claim against Defendant Edgar or identify her as an involved party. Even though the grievance was improperly rejected, it would not have provided the respondent the necessary information to ascertain Defendant Edgar's involvement had it been considered on the merits. Plaintiff's speculation that the respondent would have learned Edgar's identity or discovered her involvement had the grievance not been rejected is nothing more than unsupported speculation.

## CONCLUSION

For the foregoing reasons, I recommend that the Court **deny** Defendant Babbitt's motion for summary judgment (ECF No. 24), **grant** Defendant Edgar's motion for summary judgment (ECF No. 27), and dismiss Plaintiff's claim against Defendant Edgar **without prejudice**.

Dated: September 22, 2022            /s/ Sally J. Berens
                                     SALLY J. BERENS
                                     U.S. Magistrate Judge

## NOTICE

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file

objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).