UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MACKING NETTLES, JR. #271812,

    Plaintiff,

v.

ANDREA EDGAR, et al.,

    Defendants.
_____/

Hon. Robert J. Jonker

Case No. 1:22-cv-119

**REPORT AND RECOMMENDATION**

    This is a civil rights action by a state prisoner pursuant to 42 U.S.C. § 1983, in which Plaintiff Macking Nettles alleges that remaining Defendant Rueben Babbitt was deliberately indifferent to his serious medical need, in violation of the Eighth Amendment, by ignoring his requests to refill his albuterol inhaler for his asthma, causing Plaintiff to suffer an asthma attack.

    Presently before me is Defendant Babbitt's Motion for Summary Judgment. (ECF No. 83.) The motion is fully briefed and ready for decision. Pursuant to 28 U.S.C. § 636(b)(1)(B), I recommend that the Court **GRANT** Defendant Babbitt's motion, **DISMISS WITHOUT PREJUDICE** Plaintiff's claims against Unknown Parties Nos. 1 and 2 for failure to effect timely service, and **terminate** this action.

**I. Background**

    Plaintiff, a prisoner currently incarcerated with the Michigan Department of Corrections (MDOC) at the Parnall Correctional Facility, filed his original complaint in this case on or about February 8, 2022, against Courtney Miller, PhA, Reuben Babbitt, RN, and Unknown Parties Nos. 1 and 2, both of whom he identified as registered nurses. (ECF No. 1.) Plaintiff alleged that, while

housed at the Carson City Correctional Facility (DRF) in August 2021, Defendants violated his Eighth Amendment rights by ignoring his requests to refill his albuterol inhaler for his asthma. (ECF No. 1 at PageID.1–3.) On or about May 6, 2022, Plaintiff filed a verified amended complaint, which dropped Defendant Miller as a party and instead named Andrea Edgar, N.P., as a new Defendant. (ECF No. 14.) On October 31, 2022, following motions for summary judgment based on lack of exhaustion, the Court dismissed Plaintiff's claims against Defendant Edgar without prejudice. (ECF Nos. 62 and 71.) Since Defendant Babbitt's appearance through counsel on July 5, 2022 (ECF No. 20), and entry of the Case Management Order and Amended Case Management Order on July 5, 2022, and November 1, 2022 (ECF Nos. 22 and 72), Plaintiff has taken no steps to identify the Unknown Defendants for purposes of service.

Plaintiff alleges in his verified amended complaint that, approximately 20 years ago, an MDOC physician diagnosed him with asthma and prescribed an albuterol inhaler with a Keep-On-Person (KOP) authorization. His inhaler is refilled every three months. Over the years, to obtain the refill, Plaintiff simply kited healthcare with his refill request and usually received a medical callout the next day to pick up his new inhaler, without being required to see a medical provider for an examination. (ECF No. 14 at PageID.113.)

Plaintiff's previous inhaler prescription expired on May 6, 2021. (ECF No. 84-2.) Plaintiff did not request an inhaler refill until August 2021. He alleges that from August 11, 2021, to August 23, 2021, he made several requests to healthcare to refill his KOP inhaler, but his requests were ignored. (ECF No. 14 at PageID.113–14.) During this time, Plaintiff had a first-shift job in food service. (ECF No. 84-3 at PageID.542.)

On August 11, 2021, Plaintiff sent a kite to DRF healthcare requesting a refill of his prescription albuterol inhaler. Courtney Miller responded, noting that the order (prescription) had

expired. Miller also told Plaintiff to kite healthcare for an evaluation to renew the prescription. Finally, she told Plaintiff to have his unit officer contact health care if he was having trouble breathing. (ECF No. 84-4.) On August 13, 2021, Plaintiff sent a kite to healthcare asking for a prescription refill for his inhaler. Elizabeth Miller, LPN, scheduled a chart review with a medical provider for evaluation. (ECF No. 84-5.)

On August 20, 2021—the day Plaintiff received healthcare's response to his August 11, 2021 kite—Plaintiff sent an angry and expletive-laden kite to healthcare complaining about having to be seen by a medical provider to obtain his inhaler refill, when he had previously received refills every three months on a regular basis without issue. Plaintiff added that he had no need to go to a corrections officer because,

> [t]hat's what the fuck I'm doing here, letting you know I need my inhaler as I am having trouble breathing, s[o] give me another inhaler immediately, not when I fucking go into an asthma attack which is too fuckin' late! Research it! Immediately I'm starting to put together and file a lawsuit on y'all asses, coming for jobs and licenses.
>
> Y'all got the right one!

(ECF No. 84-6; ECF No. 86-4.) Roxanne Fosburg, RN, addressed the kite and forwarded it to RN-13.[1] (ECF No. 84-6.) On August 21, 2021, Plaintiff sent another kite to healthcare directed to Elizabeth Miller and Courtney Miller, reiterating his prior threat to file a lawsuit because of their failure to provide him an inhaler. (ECF No. 84-7; ECF No. 86-5.) Nurse Fosburg also addressed this kite and referred it to RN-13. (ECF No. 84-7.)

On August 22, 2021, Plaintiff sent another kite to healthcare stating, "Fourth follow-up Kite. I am having trouble breathing, wheezing, lungs tight, shortness of breath. Need my inhaler. This time of year is most serious for my asthma." (ECF No. 84-8.) Defendant Babbitt, who was a

---

[1] RN-13 appears to be a Michigan Civil Service Commission Registered Nurse classification. (ECF No. 86-16 at PageID.631–33.)

night nurse, received this kite and deemed it a non-urgent request for an inhaler because it had not been triaged as a request for immediate care by first-shift nurses. (ECF No. 84-9 at PageID.558.) As a nurse, Babbitt is not authorized to issue a prescription or to issue prescribed medication to a prisoner who does not have an active prescription for the medication. (*Id.*) Defendant Babbitt advised Plaintiff that his prescription had expired and that if he was having trouble breathing, he should ask his unit officer to contact healthcare for an evaluation. (ECF No. 84-8.)

Early the next morning, August 23, 2021, Plaintiff was assessed by healthcare after he notified staff that he was having breathing issues. Plaintiff stated that he was out of his inhaler and that "he had to get one 'from the streets,'" *i.e.*, he borrowed another prisoner's inhaler. (PageID.84-10.) Plaintiff did not appear in pain or in distress, was clear to auscultation, had even and non-labored respirations, and his blood oxygen level was 98%. (*Id.* at PageID.562–65.) The nurse practitioner renewed the albuterol prescription that day, and Plaintiff was given a new inhaler. (*Id.* at PageID.563.) Plaintiff was argumentative and disgruntled during the examination and could not appreciate the difference between kiting for a routine appointment, question, or medication refill and a phone call for a medical emergency. (*Id.* at PageID.565.)

## II. Motion Standard

Summary judgment is appropriate if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Material facts are facts that are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.*

The court must draw all inferences in a light most favorable to the non-moving party, but may grant summary judgment when "the record taken as a whole could not lead a rational trier of

4

fact to find for the non-moving party." *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

### III.  Discussion

#### A.  Defendant Babbitt

Plaintiff alleges that Defendant Babbitt was deliberately indifferent to his serious medical need by not providing/arranging for medical care upon reviewing his kite. Plaintiff believes that Babbitt would not have been deliberately indifferent if he had "simply made a phone call to [Plaintiff] and inquired into [his] symptoms." (ECF No. 84-3 at PageID.540.)

The Eighth Amendment's prohibition against cruel and unusual punishment applies not only to punishment imposed by the state, but also to deprivations that occur during imprisonment and are not part of the sentence imposed. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Estelle v. Gamble*, 429 U.S. 97, 101-02 (1976). Punishment that is without penological justification or involves the unnecessary and wanton infliction of pain also violates the Eighth Amendment's proscriptions. *See Rhodes v. Chapman*, 452 U.S. 337, 346 (1981). In other words, the Eighth Amendment prohibits "the gratuitous infliction of suffering." *Gregg v. Georgia*, 428 U.S. 153, 183 (1976).

The unnecessary and wanton infliction of pain encompasses "deliberate indifference" to an inmate's "serious medical needs." *Estelle*, 429 U.S. at 104-06; *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001). Determining whether denial of medical care amounts to an Eighth Amendment violation involves two steps. First, the court must determine, objectively, whether the alleged deprivation was sufficiently serious. A "serious medical need" sufficient to implicate the Eighth Amendment is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's

5

attention." *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008). Thus, the objective component is satisfied where a prisoner receives no treatment for a serious medical need. *See Rhinehart v. Scutt*, 894 F.3d 721, 737 (6th Cir. 2018). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 898 (6th Cir. 2004), the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Napier*, 238 F.3d at 742 (internal quotation marks omitted). When a plaintiff claims that care he received was inadequate, he must demonstrate that his doctor rendered grossly incompetent treatment. *Rhinehart*, 894 F.3d at 737. To meet this standard, the plaintiff must "present expert medical evidence describing what a competent doctor would have done and why the chosen course was not just incompetent but grossly so." *Phillips v. Tangilag*, 14 F.4th 524, 536 (6th Cir. 2021) (citing *Jones v. Muskegon Cnty.*, 625 F.3d 935, 945–46 (6th Cir. 2010)).

If the plaintiff satisfies the objective component, he must then demonstrate that the defendant possessed a sufficiently culpable state of mind:

> a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer*, 511 U.S. at 837. In other words, the plaintiff "must present evidence from which a trier of fact could conclude 'that the official was subjectively aware of the risk' and 'disregard[ed] that risk by failing to take reasonable measures to abate it.'" *Greene v. Bowles*, 361 F.3d 290, 294 (6th Cir. 2004) (citing *Farmer*, 511 U.S. at 829, 847). To satisfy this part of the analysis, the plaintiff must demonstrate that the defendant acted with "deliberateness tantamount to intent to punish." *Miller v. Calhoun Cnty.*, 408 F.3d 803, 813 (6th Cir. 2005).

6

### 1.    Objective Component

A diagnosis of asthma, alone, does not necessarily constitute a serious medical condition. *See Dillard v. Henderson*, No. 4:20-CV-P185, 2021 WL 3134252, at *2 (W.D. Ky. July 23, 2021) ("Courts generally agree that the diagnosis of asthma alone is not enough to establish a sufficiently serious medical need under the Eighth Amendment."); *McMurry v. Caruso*, No. 1:07-cv-905, 2009 WL 198519, at *7 (W.D. Mich. Jan. 27, 2009) (finding that the plaintiff's mere diagnosis of asthma was insufficient to establish the objective component of the plaintiff's deliberate indifference claim). Instead, courts distinguish the mere "existence of the condition . . . from the situation in which an inmate is suffering an actual attack." *Patterson v. Lilley*, No. 02 Civ.6056, 2003 WL 21507345, at *4 (S.D.N.Y. June 30, 2003); *see Board v. Farnham*, 394 F.3d 469, 484 (7th Cir. 2005) ("We have previously held that asthma can be, and frequently is, a serious medical condition, depending on the severity of the attacks." (citing *Garvin v. Armstrong*, 236 F.3d 896, 898 (7th Cir. 2001))); *Crosby v. Perry*, No. 4:09-CV-139, 2010 WL 2464887, at *6 (M.D. Ga. June 14, 2010) (noting that "courts must look to the seriousness of the condition at the time of the events alleged in the complaint" (citing, among others, *Williams v. Rodriguez*, 509 F.3d 392, 401–02 (7th Cir. 2007))). As one court, has observed, "[i]t is common knowledge that some asthma 'attacks' are mild and brief in duration, while others are severe, prolonged, and even life threatening. Courts recognize this distinction and refuse to fashion a rule that every instance of failure to treat a prisoner's asthma rises to the level of a constitutional claim." *Thomas v. Mikell*, No. 608-012, 2008 WL 2156362, at *2 (S.D. Ga. May 22, 2008) (footnote omitted). The *Thomas* court also noted that in considering whether a plaintiff's asthma symptoms constituted an objectively serious condition, courts "have required a showing that the asthma attack was severe or that it led to physical harm." *Id.* (collecting cases). Thus, courts consider mild asthma symptoms, or asthma that can be controlled with inhalers or other medications, a non-serious condition for purposes of the Eighth

Amendment. *See Wright v. J & S Extradition Servs.*, No. 3:11-0464, 2012 WL 1681812, at *6 (M.D. Tenn. May 11, 2012) ("Asthma that '[can] be managed with "with the use of inhalers and other medication . . .,"' is not a serious health condition for the purposes of the Eighth Amendment." (quoting *Jones v. Caruso*, 421 F. App'x 550, 552 (6th Cir. 2011))); *Stoneman v. Thompson*, No. 3:03CV716, 2005 WL 3881432, at *4 (E.D. Va. Apr. 19, 2005) (finding the plaintiff's asthma not serious where the record indicated that it "was well-controlled without the need for more rigorous monitoring").

Babbitt offers *Reeves v. Jaramillo*, No. 4:04-CV-125, 2005 WL 2177238 (W.D. Mich. Sept. 8, 2005), as support for his contention that Plaintiff's symptoms were not sufficiently serious. The plaintiff in *Reeves* alleged, among other things, that the defendants had destroyed his inhaler—which had been restricted due to the plaintiff's misuse of it—and denied him treatment for an asthma attack. Although the plaintiff's medical records did not align with his claim that he experienced an asthma attack, the plaintiff stated in his affidavit that he experienced "shortness of breath," and after his request for an inhaler was denied, he self-treated through "slow breathing" exercises. *Id.* at *3. The court observed that "[a]sthma can be a serious medical condition depending on the degree of the condition," but found the plaintiff's alleged "shortness of breath" that resolved with "slow breathing" not "sufficiently serious to implicate the Eighth Amendment." *Id.* at *4. In support of this conclusion, the court cited *Bates v. Sullivan*, 6 F. App'x 425, 428 (7th Cir. 2001), and *Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999), which held that breathing problems, chest pains, dizziness, and the like are not sufficiently serious to be constitutionally actionable. *Id*. Babbitt contends that *Reeves* is instructive here because Plaintiff's complaints about his asthma symptoms were similar in severity to those of the plaintiff in *Reeves*, no medical record supports Plaintiff's claim that he had trouble breathing, and Plaintiff's access to

his inhaler was restricted because his prescription had expired several months earlier. (ECF No. 84 at PageID.515.) Plaintiff, in contrast, relies heavily upon *Harrison v. Ash*, 539 F.3d 510 (6th Cir. 2008), which observed that "the symptoms associated with an asthma attack—wheezing, difficulty breathing, tightness in the chest—are quite obvious and recognizable even to a lay person." *Id.* at 518–19. Plaintiff asserts that these are the same symptoms that he reported in his August 22, 2021 kite to Defendant Babbitt. (ECF No. 86 at PageID.578.)

While Plaintiff is correct that his reported symptoms were similar to those the Sixth Circuit described in *Harrison*, there is more to the analysis as to whether Plaintiff was suffering from a severe asthma attack. In this regard, it is worth noting that, in *Harrison*, the parties did not dispute that the plaintiff's asthma satisfied the objective component of his deliberate indifference claim. *Id.* at 518. Indeed, the plaintiff's symptoms in *Harrison* were much more severe: he was seen in the medical unit numerous times on the day in question, was treated multiple times but his symptoms persisted and worsened, and he was taken to the hospital after suffering a grand mal seizure, where he later died. *Id.* at 514–15. In contrast, Plaintiff's first two kites on August 11 and 13 simply requested a refill for his inhaler and did not state that he was experiencing any asthma symptoms. (ECF Nos. 84-4 and 84-5.) Similarly, Plaintiff complained in his August 20 kite that he needed his inhaler. He did mention "trouble breathing," but admitted that he was not yet having "an asthma attack." (ECF No. 84-6.) Plaintiff's first August 22 kite likewise mentioned "trouble breathing," but again simply demanded an inhaler. (ECF No. 84-7.) In his second August 22 kite, addressed by Babbitt, Plaintiff reported additional symptoms, but again only said that he needed his inhaler. Babbitt reminded Plaintiff about having his unit officer contact healthcare if he was having trouble breathing. When healthcare finally saw Plaintiff on August 23—after Plaintiff had

9

borrowed another prisoner's inhaler and after he contacted staff—the examination findings were unremarkable, and Plaintiff was given an inhaler. (ECF No. 84-10.)

In light of the foregoing, I recommend that the Court conclude that Plaintiff fails to demonstrate that his asthma was a serious medical need. Other than citing the symptoms he reported in his August 22, 2021 kite, Plaintiff fails to demonstrate that his asthma was severe or that it caused physical harm. *Thomas*, 2008 WL 2156362, at *2. He has submitted no "evidence indicating that he required hospitalization or other emergency medical attention." *McMurray*, 2009 WL 198519, at *8. Moreover, by August 20, 2021, Plaintiff had received PhA Miller's kite response instructing him to have his unit officer contact healthcare if he was having trouble breathing so that healthcare could evaluate him; yet he did not follow through on this instruction until August 23. Plaintiff's suggestion that he was not required to go through his unit officer lacks merit, as MDOC Policy Directive 03.04.100 specifically informs prisoners that, if they believe they have an urgent/emergent health condition, they may request healthcare services by notifying staff of the problem, who in turn will contact healthcare. Mich. Dep't of Corr. Policy Directive 03.04.100 ¶ VV (effective Dec. 17, 2018).[2] Finally, Plaintiff admitted that he alleviated his symptoms—without medical staff intervention—by borrowing another prisoner's inhaler. These facts lie somewhere between *Reeves* and *Harrison*, but are much closer to *Reeves*.

---

[2] The current version of Policy Directive 03.04.100, effective January 9, 2023, includes this provision under paragraph XX. https://www.michigan.gov/corrections/public-information/statistics-and-reports/policy-directives. This provision was also included as paragraph RR in a prior version of Policy Directive 03.04.100 effective February 1, 2015. Thus, it appears that the MDOC has included this provision in Policy Directive 03.04.100 as early as February 2015 through the present version.

### 2. Subjective Component

Plaintiff also fails to establish the subjective component of his claim. Babbitt's only involvement was addressing Plaintiff's second August 22 kite, in which Plaintiff reported symptoms of "trouble breathing, wheezing, lungs tight, and shortness of breath," and repeated his request for an inhaler. It is undisputed that Babbitt was not authorized to renew Plaintiff's prescription or to issue him an inhaler because his prescription had expired. Babbitt also explained in his affidavit that he did not perceive Plaintiff's request as presenting an immediate or urgent medical need because it was submitted by kite, which takes more time to process than a request for care presented by unit staff through a phone call to medical personnel, and Plaintiff merely requested an inhaler refill rather than urgent treatment. (ECF No. 84-9 at PageID.558–59.) Babbitt responded by directing Plaintiff to notify his unit officer if he was having trouble breathing. (ECF No. 84-8.) Arguably Babbitt should have done something to check on Plaintiff, perhaps by calling Plaintiff's unit officer, but Plaintiff fails to demonstrate that Babbitt perceived a substantial risk of serious harm and ignored the risk. *Farmer,* 511 U.S. at 837. It is well established that mere negligence in diagnosing or treating a medical condition does not constitute an Eighth amendment violation. *Id.* at 835; *see also Whitley v. Albers*, 475 U.S. 312, 319 (1986) ("It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause."). Thus, Plaintiff's Eighth Amendment claim fails on this basis as well.[3]

---

[3] Because Plaintiff fails to demonstrate a constitutional violation, I find no need to address Defendant Babbitt's separate qualified immunity argument. *See Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016) ("If either step [of the qualified immunity inquiry] is not satisfied, then qualified immunity shields the government officer from civil damages.").

B.  **Unknown Parties**

Federal Rule of Civil Procedure 4(c) indicates that "[a] summons must be served together with a copy of the complaint." The time frame within which service must be effected is articulated in Rule 4(m), which provides that if service of the summons and complaint is not made upon a defendant within 90 days after the filing of the complaint, "the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time." If the plaintiff demonstrates good cause for such failure, however, the court "must extend the time for service for an appropriate period." Fed. R. Civ. P. 4(m).

On April 8, 2022, the Court ordered that Plaintiff's complaint be served. (ECF No. 8.) The Court's Order expressly informed Plaintiff that "the 90-day period for service set forth in [Rule] 4(m) shall run, starting with the date of this order." (*Id.*) As noted above, the May 3, 2022 Order (ECF No. 13) denied Plaintiff's motion to serve discovery requests on Defendants to identify the Unknown Parties, but advised Plaintiff that he could seek such discovery once the Case Management Order entered. (*Id.*) In the more than eleven months since the Case Management Order was entered, Plaintiff has neither requested an extension of time to effect service on these Unknown Parties nor requested the Court's assistance in identifying these individuals. Nor is there any indication that Plaintiff served discovery requests seeking the identities of the Unknown Parties. Considering Plaintiff's lack of diligence, I recommend that Plaintiff's claims against the Unknown Parties be dismissed without prejudice for failure to timely effect service.

IV.  **Conclusion**

For the foregoing reasons, I recommend that the Court **GRANT** Defendant Babbitt's Motion for Summary Judgment (ECF No. 83) and dismiss Plaintiff's remaining claim with

prejudice. I further recommend that the Court **DISMISS** Plaintiff's claims against the Unknown Parties **WITHOUT PREJUDICE** and **terminate** this action.


Dated: June 21, 2023                                                                        /s/ Sally J. Berens
                                                                               SALLY J. BERENS
                                                                               U.S. Magistrate Judge

**NOTICE**

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).