UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MACKING NETTLES, JR.,

       Plaintiff,

                                         CASE No. 1:22-cv-119

v.

                                         HON. ROBERT J. JONKER

ANDREA EDGAR, et al.,

       Defendants.

_____/

## ORDER APPROVING AND ADOPTING
## REPORT AND RECOMMENDATION

The Court has reviewed Magistrate Judge Berens' Report and Recommendation in this

matter (ECF No. 92) and Plaintiff's Objection to the Report and Recommendation (ECF No. 95).

The Court has also reviewed a letter addressed to the Magistrate Judge that the Court treats as a

supplement to Plaintiff's objections.  (ECF No. 96).   Under the Federal Rules of Civil Procedure,

where, as here, a party has objected to portions of a Report and Recommendation, "[t]he district

judge . . . has a duty to reject the magistrate judge's recommendation unless, on de novo

reconsideration, he or she finds it justified."  12 WRIGHT, MILLER, & MARCUS, FEDERAL PRACTICE

AND PROCEDURE § 3070.2, at 381 (2d ed. 1997).  Specifically, the Rules provide that:

> [t]he district judge must determine de novo any part of the
> magistrate judge's disposition that has been properly objected to.
> The district judge may accept, reject, or modify the recommended
> disposition; receive further evidence; or return the matter to the
> magistrate judge with instructions.

FED R. CIV. P. 72(b)(3).  De novo review in these circumstances requires at least a review of the

evidence before the Magistrate Judge.  *Hill v. Duriron Co.*, 656 F.2d 1208, 1215 (6th Cir. 1981).

The Court has reviewed de novo the claims and evidence presented to the Magistrate Judge; the Report and Recommendation itself; and Plaintiff's Objections.  After its review, the Court finds that Magistrate Judge Berens' Report and Recommendation is factually sound and legally correct.

Plaintiff is currently lodged at the Parnall Correctional Facility following a September 24, 1998, sentence for a second-degree murder conviction.  Approximately twenty years ago an MDOC physician diagnosed Plaintiff with asthma and prescribed him with an albuterol inhaler with a Keep-On-Person (KOP) authorization.  Over the years, Plaintiff has refilled his inhaler every three months by sending a kite to healthcare and receiving a medical callout the next day to pick up his new inhaler.

On May 6, 2021, Plaintiff's inhaler prescription expired, and Plaintiff requested a refill of his prescription on August 11, 2021.[1]  But unlike his previous experience, he did not receive a medical callout the next day.  Instead Courtney Miller responded by noting Plaintiff's prescription had expired and that Plaintiff needed to send a kite to healthcare to have an evaluation before the prescription would be renewed.  Ms. Miller also told Plaintiff to have his unit officer contact healthcare if he was having trouble breathing.   Plaintiff did not receive this response until August 20, 2021, and in the meantime he sent a series of additional kites to healthcare.  On August 13 (the day after Plaintiff usually would have received his callout) Plaintiff sent a kite to healthcare asking for a prescription refill.   Elizabeth Miller, LPN, scheduled a chart review with a medical provider for an evaluation.  Plaintiff received Courtney Miller's response to his August 11 request on August 20.  Thereafter he sent an angry kite to healthcare to complain about having to go through

---

[1] There are indications in the record that Plaintiff had been given an extra inhaler at some point and presumably used that extra inhaler for this approximate three-month period.

a medical evaluation when, previously, his refill requests had simply been refilled.  Plaintiff sent another kite to healthcare on August 21, 2021.

There is nothing in the record that indicates Defendant Babbitt knew about any of this when he received another one of Plaintiff's kites on August 22, 2021.  In the kite, Plaintiff complained of the following symptoms: "I am having trouble breathing, wheezing, lungs tight, shortness of breath.  Need my inhaler.  This time of year is most serious for my asthma." (ECF No. 84-8).  The kite was not marked for immediate attention by the first shift nurses, and was left to Defendant Babbitt, a night nurse.  Defendant Babbitt avers that non-urgent kites were left for night nurses, like himself.  (Babbitt Aff. ¶ 7, ECF No. 84-9, PageID.558).  Moreover, Defendant Babbitt was not authorized to issue a new prescription, nor could he give prescription medication to a prisoner who did not have an active prescription for that medication.  So, Defendant Babbitt responded to Plaintiff by noting that Plaintiff's prescription had expired, and that if Plaintiff was having trouble breathing, he should have his unit officer contact healthcare for an evaluation.  (ECF No. 84-8, PageID.555).

Plaintiff was, in fact, evaluated by healthcare the next day, August 23, 2021.  During his evaluation, Plaintiff said he had borrowed an inhaler from someone else in the prison yard and used it that day.  On examination, Plaintiff did not appear in pain or distress, had even and non-labored respirations, and his blood oxygen level was 98%.  Following the examination, Plaintiff was given a new inhaler.  Thereafter Plaintiff filed this lawsuit.  Relevant for purposes here, he sued Defendant Babbitt on the basis that the nurse was deliberately indifferent to his serious medical need by not arranging for medical care upon review of Plaintiff's August 22, 2021, kite.

The Magistrate Judge carefully and thoroughly considered the evidentiary record, the parties' arguments, and the governing law.  The Magistrate Judge correctly determined that

3

Plaintiff could not meet both the objective and subjective prongs of a deliberate indifference claim. In his objection, Plaintiff primarily contends that he has met the objective prong based on Defendant Babbitt's admission in an interrogatory that "[d]eath is a possible outcome from an asthmatic episode." (ECF No. 86-17, PageID.640).  He claims the Magistrate Judge overlooked this statement.  But the Magistrate Judge recognized as much.  *See* Report and Recommendation at 7, ECF No. 92, PageID.690 ("As one court, has observed, '[i]t is common knowledge that some asthma 'attacks' are mild and brief in duration, while others are severe, prolonged, and *even life threatening*.'") (quoting *Thomas v. Mikell*, No. 608-012, 2008 WL 2156362, at *2 (S.D. Ga. May 22, 2008) (emphasis added)).  The Magistrate Judge correctly reviewed the governing law. Nothing in Plaintiff's objections disturb the Magistrate Judge's well-reasoned analysis.

Turning to the subjective component of a deliberate indifference claim, Plaintiff takes issue with the Magistrate Judge's observation that "[a]rguably Babbitt should have done something to check on Plaintiff, perhaps by calling Plaintiff's unit officer[.]" (Report and Recommendation at 11, ECF No. 92, PageID.694).  To Plaintiff, this is a tacit determination that Plaintiff had met the subjective prong of a deliberate indifference claim.  Plaintiff further claims that under the Magistrate Judge's analyses in other, unspecified decisions, he would have established the subjective prong, and he claims that the Magistrate Judge singled him out by concluding otherwise. The Court disagrees.  Every case is different and applying the same law sometimes leads to different results depending on the facts of the case.  Here, the Magistrate Judge's application of the law to the summary judgment record of this case and her subsequent recommendation was entirely proper and correct.  The Court determines that Plaintiff has not met the subjective prong of a deliberate indifference claim for the very reasons articulated by the Magistrate Judge.  The Magistrate Judge's observation on what Defendant Babbitt could also have done does not change

4

matters.  But even accounting for this argument, Defendant Babbitt would be entitled to qualified immunity here.

"Under the doctrine of qualified immunity, 'government officials performing discretionary functions generally are shielded from liability from civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Phillips v. Roane County*, 534 F.3d 531, 538 (6th Cir.2008) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  Determining whether the government officials in this case are entitled to qualified immunity generally requires two inquiries:  "First, viewing the facts in the light most favorable to the plaintiff, has the plaintiff shown that a constitutional violation has occurred?  Second, was the right clearly established at the time of the violation?" *Id.* at 538-39 (citing *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006)); *cf. Pearson v. Callahan*, 555 U.S. 223 (2009) (holding that the two-part test is not longer considered mandatory; thereby freeing district courts from rigidly, and potentially wastefully, applying the two-part test in cases that could more efficiently be resolved by a modified application of that framework).  In determining whether Defendant is entitled to qualified immunity, the focus is on the objective legal reasonableness of his actions in light of clearly established law as it existed when he engaged in the challenged conduct.  *See Anderson v. Creighton*, 483 U.S. 635, 640 (1987); *Harlow*, 457 U.S. at 818; *Fisher v. Harden,* 398 F.3d 837, 845 (6th Cir. 2005).  Accordingly, the Court must determine "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Fisher*, 398 F.3d at 845 (quoting *Saucier*, 533 U.S. at 202).

The Supreme Court clarified the definition of deliberate indifference in the Eighth Amendment context by equating it with criminal recklessness, which requires a subjective showing that the defendant was aware of the risk of harm.  *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Deliberate indifference, the Court held, requires that "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.*; *Brooks v. Celeste*, 39 F.3d 125, 128-29 (6th Cir. 1994). The *Farmer* Court added that "prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if harm ultimately was not averted." *Farmer*, 511 U.S. at 844.

Plaintiff never requested urgent treatment. He clearly was managing well enough to send several kites and did not contact his unit officer, despite being instructed to do so if he was having trouble breathing, when he received Courtney Miller's response on August 20, 2021, two days before kiting Defendant Babbitt. And when Defendant Babbitt, who is a night nurse, received Plaintiff's kite, he noted that it had not been triaged for immediate care by the first shift nurses. For these reasons, the Court concludes that Defendant Babbitt is also entitled to summary judgment based on qualified immunity.

### CONCLUSION

**ACCORDINGLY, IT IS ORDERED** that the Report and Recommendation of the Magistrate Judge (ECF No. 92) is **APPROVED AND ADOPTED** as the opinion of the Court.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment (ECF No. 83) is **GRANTED.**

**IT IS FURTHER ORDERED** that Plaintiff's remaining claims against the unknown defendants are **DISMISSED WITHOUT PREJUDICE.**

This case is **DISMISSED.** A separate Judgment shall issue.

Dated:     July 12, 2023          /s/ Robert J. Jonker
                                  ROBERT J. JONKER
                                  UNITED STATES DISTRICT JUDGE